UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 7:09-CV-128

DAVID RATLIFF                                                                PLAINTIFF

v.                    **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                          DEFENDANT

* * *   * * *   * * *   * * *

This matter is before the Court on cross motions for summary judgment filed by Plaintiff

David Ratliff ("Ratliff") and Defendant Michael J. Astrue, Commissioner of Social Security

("the Commissioner").  Rec. 10, 14.  Ratliff asserts that the Commissioner's decision denying his

claim for benefits is not supported by substantial evidence in the record because the opinions of

his treating physician, Dr. King, were not given proper consideration.  For the reasons set forth

below, the Court reverses and remands the administrative decision for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Ratliff filed an application for a period of disability and Disability Insurance Benefits on

May 30, 2007, alleging disability beginning on March 2, 2007.  AR. 101-04.  Ratliff alleges

disability due to progressive massive fibrosis, fatigue, weakness, breathing problems and

shortness of breath.  AR 101, 116.  Prior to the alleged disability onset date, Ratliff worked as an

equipment operator/foreman in the coal mines and had completed a twelfth grade education.  AR

20, 117, 122.  Ratliff's claim was denied initially and on reconsideration.  AR 61-67.

A hearing was then held before an Administrative Law Judge ("ALJ") on November 3,

2008.  AR 22-49.  On March 2, 2009, the ALJ issued an unfavorable decision, denying Ratliff's

claim for benefits.  AR 11-21.  Ratliff then filed a request for review from the Social Security

Administration's Appeals Council ("the Appeals Council"), which denied the request for review.

AR 1-3.  Accordingly, the ALJ's decision became the final decision of the Commissioner.

Because Ratliff timely pursued and exhausted all of his available administrative remedies, this

case is now ripe for review under 42 U.S.C. § 405(g).

## II.    DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to

uphold the Agency decision, "absent a determination that the Commissioner has failed to apply

the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal

quotation marks and citation omitted).  Substantial evidence is "more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285-

86 (6th Cir. 1994).

This Court must defer to the Agency's decision "even if there is substantial evidence in

the record that would have supported an opposite conclusion, so long as substantial evidence

supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475

(6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The Court may not

review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.

*Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745

F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as his own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by his impairment and that he is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show he is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that he suffers from a severe impairment or a combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that his impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental

or physical impairments. In determining the RFC, the ALJ must consider all of the claimants' impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the RFC, he must determine whether the claimant has the RFC to perform the requirements of his past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given his RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

## C. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that Ratliff has not engaged in substantial gainful activity since March 2, 2007, the alleged disability onset date. AR 16. However, the ALJ noted that Ratliff had performed part-time work the previous summer for S&S Builders and continues to work for them one to two days per week. *Id.* At step two, the ALJ determined that Ratliff has the following severe impairments: (1) chronic obstructive pulmonary disease ("COPD") and (2) chronic leg discomfort. *Id.* The ALJ relied on chest x-rays showing findings consistent with pneumoconiosis with progressive massive fibrosis in finding that Ratliff's COPD was a severe impairment. *Id.* The ALJ's finding that Ratliff's chronic leg discomfort is severe was based on a diagnosis of mild degenerative joint disease by Dr. Dennis Halbert. *Id.*

However, at step three the ALJ found that these impairments considered individually or in combination did not meet or medically equal a listed impairment. *Id.* The ALJ found that

Ratliff's COPD did not meet Listing 3.00.[1]  The ALJ also considered whether Ratliff's

musculoskeletal impairments met Listing 1.00.  Because x-rays of Ratliff's right knee only

showed mild degenerative joint disease and he did not seek any other treatment for this

impairment (such as physical therapy or surgery), the ALJ determined that Listing 1.00 was not

met.[2]

> Prior to step four, the ALJ determined that Ratliff has the RFC to:
>
> perform light work as defined in 20 CFR 404.1567(b)[3] except that he must have an option
> to sit or stand every 30 minutes.  He should not work in excessively dusty or fumous
> environments.  He should not work at heights or around dangerous machinery.

*Id.* at 17.  Based on this RFC, the ALJ determined at step four that Ratliff was not able to

perform the requirements of his past relevant work as a coal miner because this work was

performed at the medium to heavy exertional level.  *Id.* at 20.

At step five, the ALJ determined that considering Ratliff's age, education, work

experience, and RFC, there are jobs existing in significant numbers in the national economy that

he could perform.  *Id.*  This finding was based on testimony by a vocational expert ("VE") that an

individual of Ratliff's age, education, work experience, and RFC would be able to perform

---

[1] Ratliff has not argued on appeal that he satisfies any of the listings under section 3.00.

[2] Ratliff has not challenged the ALJ's finding that Listing 1.00 was not met.

[3] According to Social Security Regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it
requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing
and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light
work, you must have the ability to do substantially all of these activities.  If someone can do light work, we
determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss
of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

representative occupations at the light exertional level such as office helper, product sorter and product weigher. *Id.* at 20-21. The VE also determined that Ratliff could perform such representative jobs at the sedentary exertional level as surveillance system monitor, production inspector and product assembler. *Id.* at 21. As a result, the ALJ concluded that Ratliff has not been under a disability, as defined in the Social Security Act, from March 2, 2007 through the date of the decision and denied Ratliff's claim for benefits. *Id.*

**D. Analysis**

Ratliff asserts that the Commissioner's decision denying his claim for benefits is not supported by substantial evidence because the ALJ's did not properly address the opinions of Dr. King, his treating physician. Specifically, Ratliff asserts that the ALJ failed to mention the extensive testing performed by Dr. King in support of his opinion, failed to discuss several of Dr. King's opinions indicating that Ratliff was unable to perform any work, failed to explain the weight given to Dr. King's opinion and failed to give "good reasons" for ultimately rejecting his opinions.

The treating physician rule requires the ALJ to generally give greater weight to the opinions of treating physicians than to the opinions of non-treating physicians because:

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)). Accordingly, the ALJ "must" give a treating physician's opinion controlling

weight[4] if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Where the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must still determine how much weight the opinion should be given by considering several factors including: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) any specialization of the treating physician. *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).

The Social Security regulations also require the ALJ to "give good reasons [in] the notice of determination or decision for the weight"given to the claimant's treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). A Social Security Ruling clarifies that those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at * 12, 1996 WL 374188, at * 5. This requirement has a two-fold purpose:

> [it] exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is applied. The requirement also

---

[4] However, a Social Security Ruling explains that "[i]t is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *5, 1996 WL 374188, at * 2 (July 2, 1996).

ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (citations and quotations omitted). Because the reason giving requirement exists to ensure claimants fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirements of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

In discussing the opinion evidence, the ALJ noted that Dr. King observed that "the claimant needs to stop mining and get out of the respiratory environment" in February 2007. The ALJ also referred to Dr. King's December 2007 opinion that Ratliff "is unable to return to any type of gainful employment as a result of his occupational lung disease." *Id.* Finally, the ALJ noted that Dr. King diagnosed Ratliff with mature fibrous tissue with some chronic inflammation and fibrosis on needle biopsy.

The other medical evidence in the record indicates that Dr. King treated Ratliff from December 2002 through October 2008. Dr. King provided treatment for Ratliff's right wrist pain, right knee pain, pneumoconiosis, chest pain, tuberculosis and anxiety and depression. The medical evidence also indicates that Dr. King referred Ratliff to several specialists including Dr. Goers and Dr. Robinette and includes chest x-rays and CT scans that Dr. King sent Ratliff for. Because Dr. King clearly qualifies as a treating physician, his opinions were entitled to controlling weight absent good reasons set forth by the ALJ on the record for discounting those opinions. *See* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at * 9-12, 1996 WL 374188, at * 4-5.

In this case, it appears that the ALJ regarded his RFC assessment as consistent with Dr.

King's opinion. In the hearing decision, the ALJ noted that:

> the...[RFC] assessment is supported by the medical evidence of record. The claimant has been diagnosed with chronic obstructive pulmonary disease and has a diagnosis of pneumoconiosis with progressive massive fibrosis....His treatment includes Advair and Albuterol inhalers. He has not sought emergency room treatment and there is no evidence he has been hospitalized due to breathing difficulties. *He stopped working in the coal mines as advised by his treating physician.* He is able to perform some work activities, and currently works on a part-time basis but with special accommodation, i.e., frequent breaks, go home at will when necessary.

*Id.* at 19 (emphasis added). However, upon reviewing the hearing decision, it is unclear what

weight the ALJ actually gave Dr. King's opinions. This is made problematic by the fact that the

ALJ's RFC is inconsistent with Dr. King's opinion that Ratliff could not perform any substantial

gainful activity. The ALJ was correct that on October 23, 2006, Dr. King noted that Ratliff need

to stop mining and get out of his current respiratory environment. AR 206. However, Dr. King

subsequently indicated on numerous occasions that Ratliff could not perform any substantial

gainful activity. On August 13, 2007, Dr. King's noted that Ratliff was to do no work. AR 269.

By December 2007, Dr. King recommended that Ratliff "cease all work as of August, 2006 and

that he avoid any and all environmental irritants and allergens possible." AR 256. Dr King

further opined that Ratliff "will continue to require ongoing treatment and will remain unable to

return to any type of gainful employment as a result of his occupational lung disease." *Id.*

Similarly, Dr. King opined that Ratliff did not have the respiratory capacity to perform the work

of a coal miner or to perform comparable work in a dust free environment. *Id.* at 257. On

October 6, 2008, Dr. King once again noted that Ratliff remained unable to return to any work.

*Id.* at 263.

Reviewing this evidence, it is clear that Dr. King saw Ratliff's condition as far more disabling than the ALJ did. However, in reviewing the ALJ's hearing decision, it is unclear to what extent he recognized these inconsistencies and on what basis he determined that Dr. King's opinion should be disregarded. This is particularly relevant in this case where Dr. King and Ratliff had a lengthy treatment relationship which included referrals by Dr. King to several specialists.

The Commissioner asserts that certain opinions such as whether a claimant is disabled are not medical opinions, but opinions on issues reserved to the Commissioner "because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e). As a general matter, it is correct that treating physician opinions that a claimant is disabled are not determinative. However, such opinions are nevertheless relevant evidence that the ALJ must consider. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). Accordingly, Social Security Ruling 96-5p provides that although "[t]reating source opinions on issues reserved to the Commissioner will never be given controlling weight...the notice of determination or decision *must explain the consideration given to the treating source's opinion(s)*." Soc. Sec. Rul. 96-5p, 1996 SSR LEXIS 2 at * 17, 1996 WL 374183 (1996) (emphasis added). The ALJ's hearing decision in this case offers no explanation of the consideration given to Dr. King's opinion that Ratliff was unable to perform any substantial gainful activity.

The Sixth Circuit has explained that an ALJ's failure to provide "good reasons" for giving a treating physician's opinion less than controlling weight requires reversal unless the error is a harmless *de minimis* procedural violation. *Blakely v. Commissioner of Social Security*,

581 F.3d 399 (6th Cir. 2009)(citing *Wilson*, 378 F.3d at 547).  Failure to give good reasons for discounting a treating physician's opinion is only harmless if the opinion is "so patently deficient that the Commissioner could not possibly credit it" or if the Commissioner "has met the goal of...the procedural safeguard of reasons." *Id.* (quoting *Wilson*, 378 F.3d at 547).  However, the Sixth Circuit explained that error is never harmless where a reviewing Court is rendered unable to engage in meaningful review of the ALJ's decision.  *Id.*

In this case, the Court does not find that the ALJ's error was harmless.  While the ALJ did not completely disregard or ignore Dr. King's opinion, it is unclear what weight his opinions were actually given.  The ALJ's hearing decision does not indicate whether he recognized that his RFC assessment was inconsistent with Dr. King's opinion.  Dr. King's opinions preclude Ratliff from performing any substantial gainful activity not just work in the coal mines, while the ALJ found that he could perform light work subject to certain environmental restrictions.  In the event that the ALJ determined that Dr. King's opinion was inconsistent with the medical evidence in the record, his reasoning on the record is not sufficiently clear to permit the Court to engage in meaningful review.

In arguing that any error in this case was harmless, the Commissioner argues that Dr. King's opinion was patently deficient because the medical evidence in the record does not support it.  On this basis, the Commissioner claims that it could not have possibly been credited. *Wilson*, 378 F.3d at 547.  The Commissioner claims that Dr. King's opinion was patently deficient because the evidence in the record does not support it.  As noted above, the Court finds that there is enough evidence in the record supporting Dr. King's opinions that they are not so patently deficient that the Commissioner could not possibly have credited them.  Furthermore,

the Sixth Circuit has noted that "even if we were to agree that substantial evidence supports the ALJ's weighing of [a doctor's opinion]..., substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009); *see also Wilson*, 378 F.3d at 546 ("[T]o recognize substantial evidence as a defense to non-compliance with § 1527(d)(2) would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promise therein illusory."). While the issues of disability and RFC are reserved to the Commissioner, the ALJ was nonetheless required to "explain the consideration given to [Dr. King's] opinion(s)." *See* Soc. Sec. Rule. 96-5p; *see also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

## III.   CONCLUSION

For the reasons set forth above, the Court finds that the analysis supplied by the Administrative Law Judge prevents this Court from making a finding that the Commissioner's decision denying Ratliff's claim for benefits is supported by substantial evidence. Accordingly, this matter is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. *See Blakely*, 581 F.3d at 410 (remanding because "the ALJ failed to follow the applicable procedural requirements in reaching her disability determination, which precludes meaningful review"). However, this decision expresses no opinion on the merits of Ratliff's disability claim. The Court is merely requesting the Administrative Law Judge to set forth sufficiently clear reasoning for the weight that he gave Dr. King's opinions, including his opinions on issues reserved for the Commissioner.

Accordingly, it is **ORDERED** as follows:

(1)     Ratliff's motion for summary judgment, Rec. 10, is **GRANTED in part** to the

extent that it seeks a remand for more reasoning.

(2)     The Commissioner's motion for summary judgment, Rec. 14, is **DENIED.**

(3)     The administrative decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

(4)     **JUDGMENT** in favor of Ratliff shall be entered contemporaneously with this opinion.

This the 28th day of June, 2010.

Signed By:

_Karen K. Caldwell_

**United States District Judge**